IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


| | |  |
|---|---|---|
| GLENN WEBSTER and | ) | |
| TONGANITA WEBSTER, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 3:13cv715-MHT |
| | ) | (WO) |
| ALEXANDER SUTTON and | ) | |
| DAMIAN SUTTON, | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION AND ORDER

Plaintiffs Glenn and Tonganita Webster are citizens of Alabama. They brought this lawsuit in an Alabama state court against two defendants, one of whom is Alexander Sutton. The defendants removed this case to federal court under diversity-of-citizenship jurisdiction, 28 U.S.C. § 1332, representing that they were both citizens of Georgia. The Websters now argue that Sutton is, in fact, a citizen of Alabama and that the case should therefore be

remanded back to state court. For the reasons discussed below, the Websters' motion to remand will be granted.

## I. FACTUAL BACKGROUND

Alexander Sutton was born in Alabama and has lived here for much of his life. In December 2010, when he was 18 years old and in his first year of college at the University of Alabama, his parents moved to Georgia. In March 2011, he exchanged his Alabama driver's license for a Georgia driver's license with his parents' address on it. His vehicle was registered in Georgia and had a Georgia license plate.

In July 2013, between the incident giving rise to this lawsuit and the filing of the lawsuit, Sutton was arrested and prosecuted for driving under the influence. At his parents' urging, he withdrew from the University of Alabama and moved into his parents' Georgia home. On August 21, 2013, when the lawsuit was filed, and September 30, 2013, when it was removed to federal court, he was

living with his parents in Georgia.  However, he testified in deposition that, while he was living with his parents, he was uncertain about whether he would stay in Georgia and finally developed the intention to return to college in Alabama.

Sutton currently lives in Tuscaloosa and is enrolled in college.  He provided a declaration stating that he has no particular intent to remain in Alabama or to live in any particular State after graduating college.  If he cannot secure a job after graduating, he intends to live with his parents in Georgia.

At an on-the-record hearing on April 17, 2014, Sutton offered further testimony that he grew up in Alabama, that he attends college in Alabama, that his parents moved to Georgia when he was a freshman in college, and that he intends to move to any State in which he finds work after finishing his education.

## II. DISCUSSION

A defendant may remove to federal court a civil action brought in state court where the federal court has original jurisdiction over the action, including if that jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1441(a). In order for the court to have diversity jurisdiction, the parties must have complete diversity. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011). That is, no defendant may be a citizen of the same State as any plaintiff. In the context of a case which was initially filed in state court and removed to federal court, there must have been complete diversity at the time of removal. Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294-95 (11th Cir. 2008).

Because "[f]ederal courts are courts of limited jurisdiction," Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994), federal trial courts must strictly construe removal statutes, resolve all doubts in favor of

remand, and place the burden of establishing jurisdiction on the defendants. Miedema v. Maytag Corp., 450 F.3d 1322, 1328-30 (11th Cir. 2006); see also Rolling Greens MHP, L.P. v. Comcast SCH Holdings, LLC., 374 F.3d 1020, 1022 (11th Cir. 2004) ("A party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties.").

A person's citizenship for the purposes of diversity jurisdiction, also called his 'domicile,' is "the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." McCormick v. Aderholt, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (citation and quotation marks removed). For a competent adult, "a change of domicile requires a concurrent showing of (1) physical presence at the new location with (2) an intention to remain there indefinitely." Id. at 1258 (citation and quotation marks removed). The core question in such an analysis is therefore a question of intent; a

person can live in many places without any intent to stay there indefinitely.

There is no dispute that at the times when Sutton was served with the state-court complaint and when the lawsuit was removed to federal court, he was physically residing in Georgia.  However, "an individual's mere residence in a state" is not the same as his domicile.  Manley v. Engram, 755 F.2d 1463, 1466 n.3 (11th Cir. 1985).  The court must determine whether Sutton had the intent to return to Alabama permanently, the intent to maintain Georgia as his permanent home, or neither intent.

First, the court finds that Sutton did not have an intent to return to Alabama to live there permanently.  In the hearing, Sutton testified that he would be happy to work in any State in which he secures employment after college.  In his declaration, he stated that he went back to Alabama for only the purpose of completing his higher education.  Furthermore, he stated that, "when I graduate I am willing to work in any State."  Sutton Decl. (Doc.

No. 26-2) at ¶ 5.  At the time of removal of this lawsuit, Sutton had no claim to property within Alabama, and he had a Georgia driver's license and car registration.  As he stated in his declaration, "I did not have any connection with the State of Alabama other than the fact that some of my friends lived in the State of Alabama."  Id.

However, the court also finds that, at the time of removal, Sutton did not hold the intent to live in Georgia indefinitely or permanently.  In his deposition, he testified that he "was deciding whether he wanted to come back [to Alabama] during" the relevant times.  Sutton Dep. (Doc. No. 26-1) at 14:5-6.  Furthermore, the court finds that, at the time of removal, Sutton was willing to live and work in any State.  His indecisive, ambiguous intent did not amount to domiciliary intent with regard to the State of Georgia.

Therefore, at the time of removal, Sutton had no domiciliary intent with regard to any State.  In that circumstance, the court will look backward to his most

7

recent domicile.  For, "[a] domicile once acquired is presumed to continue until it is shown to have been changed."  Mitchell v. United States, 88 U.S. 350, 353 (1874).  The critical question then is, What was Sutton's most recent domicile?

Since minors are unable to form the requisite intent to stay in a place indefinitely, they are assigned the domicile of their parents. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989).  From the time he was born through the time he started college, Sutton's parents held their domicile in Alabama.  Therefore, at the point that he started college, he had a domicile of Alabama: His parents were domiciled in Alabama, and he was a minor.

Sutton argues that his domicile changed when his parents moved to Georgia.  He interprets the caselaw as articulating a rule similar to that for minors: that a college student's domicile will follow his parents' so long as they are providing financial support for him and

8

retaining disciplinary control over him. In support of this approach, he points to the case of Mitchell v. Mackey, 915 F.Supp. 388 (M.D. Ga. 1996) (Owens, J.). In that case, Mitchell had been seriously injured while a student in Georgia, where her parents had lived. After her accident, her parents moved to a boat in Florida. Despite the fact that Mitchell had never set foot on the boat, the court found that she had the intent to reside permanently with her parents after graduation and that her domicile therefore changed with theirs.

     However, Sutton's interpretation of Mitchell and other cases on college students is mistaken.  Rather than establishing an affirmative rule that college students take the domicile of their parents, the cases articulate a negative presumption: that courts are generally hesitant to find that a student holds the intent to change domicile merely because he attends a school in a different State. See, e.g. Scoggins v. Pollock, 727 F.2d 1025, 1028 (11th Cir. 1984) (student did not establish domiciliary intent

9

in a new State when she moved there for graduate school); Mas v. Perry, 489 F.2d 1396, 1400 (5th Cir. 1974) ("Though she testified that after her marriage she had no intention of returning to her parents' home in Mississippi, Mrs. Mas did not effect a change of domicile since she and Mr. Mas were in Louisiana only as students and lacked the requisite intention to remain there.").* Mitchell did not seek to transform the college-student rule into one that mirrored the rule for minors.  That court grounded its finding of the student's domicile, not on the fact that she was a student, but on her proven intent to live indefinitely with her parents in Florida and her physical inability, because of her serious injuries, to live elsewhere without her parents and their help.

Sutton displayed no such intent to live indefinitely with his parents in Georgia.  While there is evidence that he used his parents' home as an address for important

---

    * The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

10

mail, his driver's license, and his car insurance, these acts reflect practical decisions, rather than manifestations of a particular intent to live in Georgia. College students often have several addresses over the course of their education, such that the use of a consistent address is more convenient.

Sutton offers, in passing, a final theory for how his domicile changed from Alabama to Georgia. At the time that his parents moved to Georgia, he was 18 years old. Since Alabama's age of majority is 19, he was therefore a minor under Alabama law. 1975 Ala. Code § 26-1-1(a). Therefore, he argues that, under Alabama law, his domicile changed with his parents when they moved to Georgia. Cleckley v. Cleckley, 33 So.2d 338, 339 (Ala. 1948). When he moved to Georgia, he contends, he became a citizen of that State and no longer had an Alabama domicile.

This argument presents a conundrum because, under Georgia law and the facts presented in this case, Sutton would <u>not</u> have acquired domicile in Georgia either.

11

Unlike Alabama's, Georgia's age of majority is 18. <u>Javetz v. Nash</u>, 261 S.E.2d 388, 388-89 (Ga. 1979). According to both federal and Georgia law, an adult could acquire Georgia citizenship only if he shows a concurrence of actual residence and the intention to remain indefinitely, <u>McCormick</u>, 293 F.3d at 1257-58; <u>Kean v. Marshall</u>, 669 S.E.2d 463, 465 (Ga. App. 2008), and, as found earlier in this opinion, Sutton displayed no intent to live indefinitely with his parents in Georgia. Therefore, because Sutton was an adult under Georgia law when his parents moved to Georgia, he did not acquire a Georgia domicile by operation of law, with the result that, under Georgia law, he was still a citizen of Alabama.

Under a full extension of Sutton's argument, he lost his Alabama domicile and became a citizen of Georgia under Alabama law but did not acquire a Georgia domicile and remained a citizen of Alabama under Georgia law. Since, if both States' age-of-majority laws are honored, he was without a domicile or had two domiciles when his parents

12

moved to Georgia, the court will cut the Gordian Knot with the well-established default removal principle that a domicile once acquired is presumed to continue until it is shown to have been changed.  Mitchell, 88 U.S. at 353.  Because the record is uncertain as to whether, and, if so, how, Sutton's domicile changed when his parents moved to Georgia and because Alabama was Sutton's last recognized domicile, the court holds that Alabama, the State of his last recognized domicile, is his current one.

The application here of this default principle is also consistent with other well-established federal principles of removal.  First, there is the principle that all doubts about removal should be resolved in favor of remand.  Miedema, 450 F.3d at 1328-30.  In the face of the stand-off between Alabama's and George's age-of-majority laws, this court will resolve the doubt created by those laws by holding, consistent with the application of the above default principle, that this case must be remanded.  Second, there is the principle that the party seeking

removal bears the burden of establishing that such jurisdiction is present. Id. Applying this principle, the court finds, in the face of the state-law standoff, that Sutton has simply failed to establish that removal jurisdiction is present and thus the court holds that remand is warranted, a result that is again consistent with the application of the above default principle.

The resolution of this case based on these well-established federal principles of removal is appropriate. While Alabama and Georgia would have an interest as to what substantive law should apply, neither State has interest in how this court resolves the question of whether removal jurisdiction is appropriate. Rather, that determination "is ... one uniquely of federal cognizance and the considerations underlying Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), do not obtain." Ziady v. Curley, 396 F.2d 873, 874 (4th Cir. 1968). The determination must be made according to what "fits best with the aims of the diversity statute and the national

14

character of the federal judicial system." Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1033 (1st Cir. 1988). In short, while state law, if helpful, may inform, the issue is ultimately one of federal law.

Because Sutton and the Websters were all citizens of Alabama when this case was removed and because, as a result, there was not complete diversity of citizenship at that time, this court lacks removal jurisdiction. This case must be remanded to state court.

***

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that plaintiffs Glenn and Tonganita Webster's motion to remand (Doc. No. 23) is granted and that, pursuant to 28 U.S.C. § 1447(c), this cause is remanded to the Circuit Court of Macon County, Alabama.

All other pending motions are left for resolution by the state court after remand.

**The clerk of the court is DIRECTED to take appropriate steps to effect the remand.**

**This case is closed in this court.**

**DONE, this the 12th day of May, 2014.**

                                         <u>/s/ Myron H. Thompson</u>
                                    **UNITED STATES DISTRICT JUDGE**